Ladies and gentlemen, sorry about the delay. First case this morning is Boim v. American Muslims for Palestine. And Mr. Schlesinger. Good morning, Your Honor. Good morning. May it please the Court, Daniel Schlesinger for Plaintiffs Stanley and Joyce Boim. A Rule 12b-1 motion to dismiss for lack of subject matter jurisdiction that relies on disputed facts that go to the merits of the case should be denied unless the claim to jurisdiction is frivolous or insubstantial. That was the ruling of the United States Supreme Court in Belle v. Hood and this Court has consistently followed that rule. For example, in the Malik v. Associated Physicians Inc. case at 784 F. 2nd 277, the Court stated, where a challenge to the Court's jurisdiction is also a challenge to the existence of a federal cause of action, the Supreme Court has stated that jurisdiction cannot be defeated by the possibility that plaintiff may not have stated a cause of action, citing Belle v. Hood. The Court went on, instead, the case should be dismissed for lack of jurisdiction only if the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous. Here, the District Court disregarded that standard and in so doing, deprived the Boims of the opportunity to seek justice under the Anti-Terrorism Act for the murder of their son. The Boims had already obtained a judgment affirmed by this Court in an en banc ruling against the Islamic Association for Palestine and the American Muslim Society. The judgment debtors then proceeded to make a... Mr. Schlesinger, can I ask you a question? Certainly, Your Honor. Putting aside for a second the 12B1 issue, what's the source of our subject matter jurisdiction on the declaratory action as opposed to the enforcement action? It all, Your Honor, falls under the Anti-Terrorism Act and then the alter ego claim under that act that these defendants are essentially the same defendants as in the initial case. Well, the Anti-Terrorism Act clearly provides subject matter jurisdiction for the underlying lawsuit, but is it your argument that the Anti-Terrorism Act also is the source of jurisdiction for... I guess this is the declaratory action. I'll call this the declaratory action to distinguish it from the enforcement action that I think is still pending before Judge Cole. But is the Anti-Terrorism Act, is it your argument that the Anti-Terrorism Act is the source of subject matter jurisdiction for this declaratory action as well? Yes, Your Honor, that is our contention. All right, if we apply, as far as the alter ego theory, what law should apply to the alter ego theory? Well, the federal courts, you know, the alter ego theory is an equitable argument and it is based in state law, but there is substantial federal court discussion of that such that I think there has been a federal standard created for... And I don't think, with one exception, I don't think there's any dispute as to what the equitable requirements would be to establish the alter ego theory. So is that federal common law then? And if that's your argument, that's what I'm interested in, is should we apply Illinois law to the alter ego theory or do we apply federal common law under the Anti-Terrorism Act? Well, I think because of the importance of the Anti-Terrorism Act, we really are talking about federal common law here, although I think it can be informed by Illinois law, but I think really what we're talking about is federal common law that's been developed. Okay. By the way, what's the status of the action in front of Judge Cole? Is it just pending? I know there was the Rule 40 motion, I think, to combine the actions and then Judge Coleman decided that there was no subject matter jurisdiction under 12b.1. So is the action in front of Judge Cole just pending? It is just pending. Judge Coleman never ruled on the motion to transfer that action to her court. So I think it's just pending in front of Magistrate Judge Cole at this point. Okay. Thank you. Okay. Thank you, Your Honor. The judgment that was secured in the initial blame action against IAP and AMS never really went anywhere because those judgment debtors simply ceased doing business and at least ceased doing business under the names that they were operating under at that time. As this court observed in its en banc majority opinion in the 2008 Boehm ruling, these entities, IAP and AMS, easily slipped back and forth in what name they operated under, either as alter egos or just as alternative names for the same group serving the same purpose. So with that history, it was an easy matter for these entities to simply stop using the names IAP and AMS to reform as the American Muslims for Palestine, AMP, and the Americans for Justice in Palestine, AJP, and to continue doing the same things under the same leadership but without the stigma or the financial burden of a $156 million judgment for funding terrorism. We and the Aramiki have set out in our briefs that as the court explained in that en banc Boehm III ruling, the ATA serves an essential role in combating terrorism, not merely by providing a remedy against the terrorists themselves, who are typically impossible to reach, but by offering a path to cut off the funding for those terrorists. If it's possible to avoid the impact of the ATA as easily as by allowing the financiers of terrorism to abandon their corporate entities and to then reform under new names, then the ACT's purpose of providing a mechanism to end terror or to make a major impact on terror can be casually defeated, and grieving survivors like the Boehms will be left with no remedy, no possibility of redress. Mr. Schlesinger, if you're right that AMP is the alter ego of IAP, that the entities are just one and the same, as I think you've alleged in the first amended complaint or your clients have, why is it proper to bring in new action under the ATA? Because aren't what you're really trying to do is just enforce a judgment that you've already won? That is what we're trying to do, but our concern, Your Honor, was that technically these are incorporated as separate corporations, and to obtain an enforceable judgment against them, we needed to initiate a new action against them. As opposed to just continuing to pursue the effort to enforce the judgment against the new party, which of course is allowed. I mean, you've got to prove it up and what have you, but you can do that. Yes, Your Honor, and that is an alternative that we're still reserving the ability to do before magistrate Judge Cole in that enforcement action. Mr. Schlesinger, help me on one other aspect of this. As a descriptive matter, okay, I'm not asking you to argue the point either way. I'm going to ask Ms. Jump the same question. How did the issue before us travel down a 12B1 subject matter jurisdiction path? How did we get here to be now having to think about this question of alter ego in terms of subject matter jurisdiction? Well, Your Honor, when the suit was first filed in 2017, the defendants filed that 12B1 initial motion. Sure, but if I say, if you file a 12B1 motion in response to my Title VII complaint, and you say you failed to state a claim on which relief can be granted, it doesn't make any difference that you've identified 12B1. So the fact that 12B1 is invoked doesn't mean that the substance of the underlying motion must be evaluated in terms of subject matter jurisdiction. The problem here, Your Honor, is that the factual allegations that establish subject matter jurisdiction under the Anti-Terrorism Act are identical to the factual allegations that would create liability as alter egos. No, no, no. I know. That's your argument, okay? I guess all I'm asking, and I think the answer is yes, were you, you know, arguing along the way, this has nothing to do with 12B1. Nothing. I don't. It's one, your adversary, of course, invoked 12B1 and said, I want you to dismiss the, told the district court, I want you to dismiss for lack of subject matter jurisdiction. But did you say it has nothing to do with 12B1 in subject matter jurisdiction? I don't know that we said it in those terms, Your Honor. We do think that it's, you know, it was an inappropriate course to follow. Okay. Yeah. The reason I'm asking the question is it's just very hard for me in preparing for today to try to figure out how did, how did this get litigated in terms of a subject matter jurisdiction issue? And I've convinced myself in my own mind, I may be wrong, that the answer can't possibly be as simple as, well, the defendant invoked 12B1. Well, yeah, the defendant invoked 12B1 and the court, district court dismissed on 12B1 ground. Okay. So, Your Honors, the main question on this appeal is whether the Boehms alleged sufficient facts supporting an alter ego theory such that their claim was not wholly insubstantial and frivolous. And I'd start the analysis with the fact that the district court observed when she granted the initial motion to dismiss under 12B1 that it was a close question. So clearly it was not a frivolous claim. But beyond that, the court then allowed us to file our First Amendment complaint, which added scores of additional facts, supporting the basis for the alter ego claim, including that these organizations had the same leadership. They were promoting the same message, had the same reason for existence in their not-for-profit forms. They had the same supporters. They had the same donors. They had the same method of operating through regional chapters and national conventions. They had the same speakers. They had nearly identical websites. They had the same basic location nationally and locally. They had essentially the same newspaper with the same newspaper editor and many other identical resources. The only element, traditional element of alter ego theory that we don't have here, that we can't present, is a transfer of tangible assets. And relying on that, we believe is a mistake in the context of these not-for-profit agencies, not-for-profit corporations, which, as this court observed in the On Bank 2008 opinion, are sui generis. Those entities don't exist for the purpose of generating profits. They don't accumulate assets. So that's not something that we can look to as a requirement to see whether another entity is an alter ego. If the first entity doesn't run, doesn't generate profit, doesn't accumulate assets, the second entity would, if it's an alter ego, would be in a similar position. So we think that's, you know, if that standard were applied, that there has to be a transfer of tangible assets, it would be impossible to ever find an alter ego for a not-for-profit corporation. And on that basis, Your Honors, we would respectfully request that the district court ruling granting the 12B1 motion be reversed and that we be allowed to present our case to the  And that would be a reasonable basis for the imposition of alter ego liability on the defendants in this case. With that, unless there are questions, I would ask to reserve the rest of my time. Thank you, Mr. Slicer. Ms. Junk? Thank you, Your Honors. We are here and right now on this case because this is an alter ego case and because jurisdiction comes first. There are only business law claims in this case. No matter how much the appellants wish it were otherwise, there's no federal claim in this case. There's no ATA or any other federal claim raised by appellants in this cause of action. Appellants instead tried to bootstrap their state law claims against these entities to a year's prior judgment against other now insolvent entities. But the only continuity between the defendants in the 2000 case and the defendants in this case is that they're fighting the same plaintiffs. The district court did not have subject matter jurisdiction to hear appellants state law alter ego claims. The district court therefore properly granted appellees 12B1 motion to dismiss twice. The district court only used the language that appellant cites in this case of it being a close call the first time it dismissed it before the appellants undertook extensive jurisdictional discovery. And after deposing five people and spending nearly a year on that limited discovery, the district court described the resulting amended complaints, not as a close call, but as being replete with nearly speculative allegations. Ms. Jump, let me ask you this question on the jurisdictional issue. I want to, I want to ask it a bit in terms of a hypothetical. Assume that there was no original lawsuit. It never happened. Okay. And assume that tomorrow, Mr. Schlesinger on behalf of the, of the volumes brings an action against a whole host of entities. The old entities for shorthand purposes, IAP, Holy land, AMS, as well as new entities, AMP and AGP. Those are all the name defendants. And set aside any limitation statute limitations question altogether. My question is in that hypothetical lawsuit brought tomorrow. Under 18 USC 2333. A is there a federal subject matter jurisdiction. If the case were brought under the federal statutes and that was the claim in the case brought before the court, there would be subject matter jurisdiction. That is not the claim here. Okay. And why, and why would there be subject matter, federal subject matter jurisdiction in my hypothetical. In your hypothetical. And in accordance with Bell, the hood, if there is a federal claim, and if allegations are made under that federal claim in the pleadings, then it's 12, be six is the right time to look at whether those should be dismissed for failure to properly state a claim. Not whether you look at whether it's just at the very, very top level of whether it's frivolous or not frivolous on a federal court claim that is properly asserted. We don't have that here. That's why that's what's different. And in that hypothetical federal lawsuit, if there were paragraphs in the complaint that said, let's be very clear here. AMP did not exist at the time of the alleged wrongful conduct. Okay. As at least as a formal matter came into existence later. The reason that we have named in our, in this hypothetical lawsuit, AMP as a defendant is because in our view, AMP is an alter ego of the old entities. IAP in particular, still subject matter jurisdiction. Your honor in that situation, probably I would look at the allegations to see if they are making a direct line. So why does it differ then? Why does it all of a sudden become different? If we move out of the hypothetical to the, to the lawsuit that was brought here in the name of the ATA against a single entity, because all we've done is gone into my hypothetical and surgically pull out one defendant. AMS. I'm sorry. AMP. Right. Right. Why does, why does the legal analysis change? Your honor, the reasons that the legal analysis changes, the subject matter jurisdiction for federal courts matters first. And that's the first thing that we look at. And there is no federal cause of action here. There's no federal claim ever alleged against these entities in your hypothetical. There would be in your hypothetical, they'd be in a case with a federal court claim where there's allegations that they are, but you got it. Okay. You got to explain, you can't just state the conclusion. So explain that to me because the allegation and the real complaint is that AMP and IHP are one and the same. Okay. I know that, I know that you're, and the reason I put this in hypotheticals is because I know that I know that your clients strongly disagree with that and are prepared and did, you know, make some showing and would be prepared to make a showing. Okay. So I want to set aside, I want to set aside trying to judge the merits of it, but just focus on the, on the subject matter jurisdiction analysis, because the claim is brought in the name of the ATA in the same way as my hypothetical. So the ATA is the source of the liability. If there is any. Your Honor, the difference in the reason that it matters is because under the case law, which we've cited in our briefs and under the analysis to get to what would be ancillary jurisdiction or supplemental jurisdiction, depending on what term we used in law school, the, the allegations still have to have a connection to the ATA. And in order to do that on the ancillary claims, which would state law claims as to these defendants, then you have to look at whether there is enough of a connection alleged to under the factual analysis, simply as to not as to the ultimate value of the claims, but under the factional analysis, which is, which is appropriate for subject matter jurisdiction. Once it's called into question under Amblin Viejo Industries, then it is appropriate to look at the jurisdictional basis. And the facts that would support a jurisdictional basis. And even if we look at the, I mean, as I said, again, what does that mean? What does that mean that you need to us? You need to assess in fact, whether at the jurisdictional stage, AMP and IAP are one in the same. You need to look at whether the allegations that are made by the plaintiff in the complaints are enough to establish jurisdiction, not necessarily, not wait the whole, not wait the entire claim, not even look at it as a 12 V six level, but to see if there is enough there for the connection to grant jurisdiction to the court. Otherwise any state law claim can be, can end up being brought. I brought a lawsuit tomorrow as a plaintiff against ABC company, alleging a title seven violation. Okay. On the basis of my gender. Okay. And it just so happens that I never worked for ABC company. They never employed me. Okay. Is that 12 B is that a 12 B one dismissal or a 12 B six dismissal? I've alleged I've alleged I worked for AMP, you know, as a matter, it never happened. As a matter of law, I would hypothetically. So lots of qualifiers that it wouldn't, I haven't looked at that under the title seven, but I would say that these, this is the wrong defendants 12 B one. There's no jurisdiction. Cause that's not the employer. I would make the argument, but I feel you're a proof on the claim. What is it that I'm sorry, that, that's my question. The same question. The difference there is that there in your hypothetical, there is a federal claim in that lawsuit. And here there is not a federal claim in this law. No title. Why is title seven in my hypothetical? Why does it, why is it legally distinct from the ATA put put differently? You may win. You may win for precisely the reasons that you've articulated very well. In your briefs, these are, they're not the same entities, but what I can't figure out is why is that a question of subject matter jurisdiction going to the, the legal authority of the district court to adjudicate the claim. And your honor. And I apologize if I misconstrued or wasn't clear in my response. I'm not saying there would be a distinction on how an ATA claim versus a title seven claim should be handled. What I'm saying is that the presence of the federal cause of action is enough to get you in the Bellevue hood framework, that the presence of the federal cause of action in that case brings Bellevue hood into play where once there is the federal cause of action asserted, then you look simply at whether it's a, whether the allegations as long as they are, there are frivolous. Well, there's a cause of action provided under the ATA. I'm sorry. That 2333A supplies a cause of action. It's it supplies a cause of action, but it's not alleged against these defendants in this case. These are only state law claims in this case. The vehicle that they chose to bring is a second lawsuit with only state law claims. It doesn't have a federal claim asserted. Had they, had they brought by the fate? What do you, what do you, what are you drawing upon to say that the first amended complaint alleges a violation of 2333A doesn't it? In the facts, they described that they believe that these are the ultimate defendants, but the only claims brought against them are alter ego and fraudulent concealment claims. There is not an ATA claim asserted against these defendants. The general factual background makes clear that the plaintiffs believe that there should, that they're ultimately liable for it, but they did not make that argument. They did not bring the claim. They bring successor liability. They bring alter ego and against the individual that bring fraudulent concealment in the first amended complaint. In order to establish alter ego, again, he has to at least make the allegations. The plaintiffs need to at least make the allegations. And whether we're looking at the seventh, whether we're looking at the law in Illinois for the state law claim, or even if we're looking at federal common law, then we look at what's necessary. What facts must be fled to establish alter ego and whether there's been substantial evidence of that for a showing of jurisdiction. Again, not an ultimate victory. We're not looking at that before a showing of jurisdictional basis to get in the door in the federal court on the state law claim. And there has not, that has not happened for the reasons we've set forth in our briefs. There's no showing of a substantial identity, substantially identical management. The district court, again, in looking at this, this is the second time after over a year for specifically at their request, the plaintiffs to do jurisdictional discovery. After looking at it, the district court found that the simple fact that many individuals are connected. Who is the difference? Well, this is, I know, I know the district court called this jurisdictional discovery, but it sure seemed like merits discovery to me. It was one sided to begin with. We did not propound any discovery. Of course it was because, because they had to establish jurisdiction and you are fighting jurisdiction, but it sure looks to me like you were litigating the merits of the alter ego theory. And that's what the district court decided under rule 12 B one. It seems to me we are way, way, way outside of the bell V hood framework here. When this case was decided, I, I, I read the judge's order and it might as well be a rule 56 order as far with, with, by the way, very limited discovery. That's, that's kind of where I'm hung up on, which I think are the same. The gist of judge gutters questions as well as it just, this could have been a 12 B six motion. It could have been a rule 56 motion, but it just doesn't look like a 12 B one motion when they've certainly pled the theory. At least it seems to me that they've pled the theory. Your Honor, I believe to answer your question, first of all, the court allowed a lot of leeway on the scope of the jurisdiction that occurred, but I guess, I'm sorry, I'm sorry. I'm just going with the discovery. But why? I mean, that's, that's the whole question. I've seen jurisdictional discovery and issues like perhaps diversity of citizenship or personal jurisdiction to establish a defendant's ties to a particular community to determine where there's personal jurisdiction. But here it seemed like the jurisdiction, the judge said we're going to give you a very limited opportunity to prove your case. That one side is the alter ego of the, or one party is the alter ego of another. Your Honor, this came about because of the Supreme court case of Peacock, which we have cited in our briefs where there simply is not federal jurisdiction. How do you get around? How do you get around elite erectors? Do you just, should we, do we have to overrule elite erectors? I understand the Peacock argument and it's not a frivolous argument, but do we have to overrule elite erectors? Elite erectors distinguishes Peacock versus, and by the way, elite erectors has been criticized, but do we have to overrule it? In order to say there's no jurisdiction under Peacock because of the, because they allege direct liability against the successor entities? Your Honor, even in elite erectors, the court in the lead directors, the holding was that alter ego incorporates a C enter component coupled with an analysis of similarities between the old and new entities. So even under elite erectors, I would say that to the extent that there's a conflict with Peacock, yes, it would need to be overruled, but even under the standard as it is, that there's these plaintiffs don't meet that test either. They don't meet that showing either. And that in order to show the, in order to establish that there's a reason to be in federal court as opposed to state court where they absolutely could bring the claims, they'd have to show an unlawful motive to avoid liability and that the management business purpose, operation, equipment, customers, supervision. Well, that's wait a minute. That's, that's a risk to alter ego. That's a risk to alter ego. And you heard Mr. Schlesinger, his argument is that federal common law should apply in this context. We shouldn't be applying those factors to determine let's call it a charity or an education foundation. If, if, if, if one, if an educational institution here in Chicago was to get a judgment against it, should it just be able to close its doors on Monday and open its doors on, on Tuesday? Well, we don't have any federal assets. We don't have any assets. We don't have any desks. We don't have any pencils to transfer. So under the ERISA context of alter ego, we can't possibly be an alter ego of the company that, you know, was, was here yesterday. Totally different company. I'd be glad to address that your honor, even under the flexible standard for examining alter ego for nonprofits, that it isn't a shut the doors on Friday and open the doors again. On Monday's situation here, what you have is that the original defendants, AMP, I'm sorry, AMS, AMS and IAP were defunct and the plaintiffs had already diligently sought every asset that they had, including equipment, anything that they had by the end of 2004, late 2004, early 2005, and had had several depositions of Rafik Jabber, who had been the president of IAP in order to try to find all of those, any possible, it just sounds to me like merits sounds to me like merits discovery. Your honor, what we have here that is different than the merits is we have a distinct break. We're not talking about a continuation of business. We're talking about as Peacock stated, where there is a need to establish the under the Peacock standard, that there is a need to establish federal court jurisdiction. What we have here is that that lawsuit ended. The assets were traced and followed. There was a gap until November. I'm sorry. And so August, 2006 before AMP was created and then 2009 before AJP was created. We're not talking about going down the street, changing the sign and continuing to do the same business. Nothing happened. And the declarations of the founders, which are valid evidence to look at the declarations of Moonjan Ahmed and Dr. Hudson Bosnia, Dr. Hudson Bosnia, who founded AMP in August of 2006, make clear that they did so because there was no voice. There was nobody speaking for education on the history of Palestine and the culture of Palestine. And they created to fill a gap of void because nothing was there. And you'll note that even for the veil piercing arguments as the district court States, that there's no veil piercing here because there was nothing left to pierce. So we're not talking about a substantial overlap. We're not talking about continuation other than these plaintiffs. We're talking about the fact that they got a judgment. What happened to their son was horrific. They received that judgment against the proper defendants in their mind and in the minds of this court and many other courts. And they went after those defendants and they got all of their assets and there's a big gap. And then these entities were created by people who had nothing to do with the original defendants. And now in 2017, they brought this lawsuit as a freestanding separate lawsuit with only state law claims involved. If you're right, if you're right, that the best way to construe the first amended complaint is as alleging only a state law claim, right? How do you, how do you make sense of the district court analysis? Because wouldn't your argument in the district court have been there? There is absolutely no federal subject matter jurisdiction here. They don't, they don't even attempt to invoke federal law and it's not a diversity case. Correct. Your Honor, it's not a diversity case. So why would you say you don't, we don't need to spend a whole lot of time here. This, this, this on its face, it doesn't even invoke federal law. Your Honor, we've made that argument that on its face, there's no, there's no claim. There's no prop propriety there. The district court went further and looked at it in the ancillary jurisdiction context by looking at it in the concept of ancillary or supplemental jurisdiction to see if there was ancillary to what I agree. Your Honor, that there is nothing to be ancillary to, in my point of view, I do see that I'm out of time, but I don't believe that there, again, there's no federal cause of action. I think that there's no subject matter jurisdiction for federal court. I think that there's no subject matter jurisdiction for federal court. And I don't think that there's no subject matter jurisdiction for federal court. Judge scott. Do you have anything further? No. All right. Thank you, Miss Junk. Miss Schlesinger. Thank you. Thank you, Your Honor. Just a few points quickly. One on. The scope of discovery that we had in this case. What happened here was the district court initially granted a 12 B one dismissal. And then we moved for reconsideration. And what the district court said was. I may have been too hasty and relying on declarations of some. Defendant witnesses. And that was perhaps improper of me. So I'm going to allow limited jurisdictional discovery, which essentially amounted to us being allowed to request some documents and take depositions of the declarants. And judge Coleman, then assigned to magistrate judge Shanker, the supervision of that with strict instructions to limit our discovery to that jurisdictional discovery. Now, obviously there's, as we've been arguing, there's significant overlap between jurisdictional discovery and merits discovery. And I'm not saying that we should have been allowed to proceed with full merits discovery. We clearly would have had to do things like go after third parties, because this is not a situation where. These individuals were going to be particularly cooperative with us. Or necessarily agreed to facts that we wanted to establish. We were precluded from going after. Depositions other than the. The five or six that Ms. Jump referred to earlier. And that deprived us of our ability to prove our case. The, you know, the obvious point that I probably don't have to make, but I will anyway is that judge Coleman relied on the standards under 12B1, which allowed her to decide disputed facts. In favor of the defendants here had this proceeded under a 12B6 motion or rule 56 motion, we would have had the protections attendant to those rules and had certainly more opportunity to conduct discovery. But in addition, the lack of any, in the ability to take advantage of presumptions in our favor on disputed facts. Mr. Schlesinger, what's your response to Ms. Jump's point that in the four counts in the first amended complaint, there's at least not expressly an attempt to impose liability under 2333A. I thought we did. Count one is cast as a declaratory judgment. Count two is, is against Mr. Jobber, declaratory relief count three is a money judgment for fraudulent concealment. I think your honor, what she's saying is, I understand it is the complaint by its terms is trying to impose alter ego liability under state law. That's, that's her argument, right? And she said, if they wanted to bring a freestanding claim, call it count one under the ATA, they were entitled to, but they didn't. I think your honor, that what we were trying to do is enforce liability under 2333A against alter egos for their direct liability. This is not a peacock situation where we're looking for vicarious liability under a piercing the corporate veil theory. We are trying to enforce, you know, as the lead directors recognized the direct liability for the violation of the statute. All right, look, it may not be styled exactly as it could have been styled, but as a matter of substance, there's no way to read the first amended complaint and not read it as a request to impose liability against the new entities under the anti-terrorism act. That was much better stated your honor than I had done, but I think that is essentially our point. Yeah. The only other point is the all assets remaining that were turned over to my clients amounted on under a $156 million judgment. My clients obtained some $14,000 with essentially no cooperation. As the person winding up the affairs of IAP testified, he had no understanding that he had any obligation to help satisfy this judgment and took essentially no actions to assist my clients in any recovery. So I think my time is about done and unless there are questions, I will wrap up there. Thank you, Mr. Chisholm. Thanks to both counsel and the case will be taken under advisement.